# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# AT LONDON

| | |
|---|---|
| NANCY KAREN MINIARD<br>    Plaintiff,<br><br>V.<br><br>COMMISSIONER OF SOCIAL SECURITY<br>    Defendant. | CIVIL ACTION NO. 6:16-CV-84-KKC<br><br><u>OPINION AND ORDER</u> |

*** *** ***

This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff Nancy Miniard and Defendant Commissioner of Social Security. (DE 11 & 12). Miniard brought this action under Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under Titles II and XVI of the Social Security Act ("the Act"). The Court, having reviewed the record, will reverse the Commissioner's decision and remand this matter for further proceedings consistent with this opinion.

## I. OVERVIEW OF THE PROCESS

To determine whether a claimant has a compensable disability under the Social Security Act, the administrative law judge ("ALJ") applies a five-step sequential process. 20 C.F.R. § 404.1520(a)(1), (4); *see also Miller v. Comm'r of Soc. Sec.*, 81 F.3d 825, 835 n.6 (6th Cir. 2016) (describing the five-step evaluation process). The five steps, in summary, are:

    *Step 1:* If the claimant is doing substantial gainful activity, the claimant is not disabled.

> *Step 2:* If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> *Step 3:* If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
> *Step 4:* If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> *Step 5:* If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x. 162, 169 (6th Cir. 2016) (citing *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009)).

If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4). In the first four steps of the process the claimant bears the burden of proof. *Sorrell*, 656 Fed. App'x. at 169 (quoting *Jones v. Comm'r of Soc. Sec.* 336 F.3d 469, 474 (6th Cir. 2003)). If the claim proceeds to step five, however, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile." *Id.* (internal citations omitted); 20 C.F.R. § 404.1520(g)(1).

## II. FACTUAL AND PROCEDURAL BACKGROUND

A. Factual Background

Nancy Miniard was born in 1962. (Administrative Record ("AR") 29). She graduated from high school and completed four years of college, but did not obtain a postsecondary degree. (AR 31). Miniard does have vocational training in the fields of welding and

2

pneumatics. (AR 31). She has never been married, does not have children, and lives alone with her dog in her family's farm house. (AR 30-31). Before she allegedly became disabled, Miniard worked as a forklift driver, punch press operator, and a maintenance repairer/helper. (AR 57). Her last date of reported work was October 1st, 2001 (according to her hearing testimony) or January 2002 (according to her SSI application). (AR 32, 215).

Miniard applied for Disability Insurance Benefits and Social Security Income on February 25, 2013, alleging that she became disabled for over a decade prior to her filing, with an onset date of June 1, 2004 (according to her SSI application) or October 1, 2001 (according to her DIB application). (AR 192, 198). In her original benefits application, Miniard alleged that she was unable to work due to a combination of a bulging disc in her back, right should and leg pain, trouble sleeping, and headaches. (AR 214). Miniard's application was denied initially and on reconsideration (AR 86, 88, 112). Miniard then filed a timely request for a hearing before an ALJ. (AR 143-44).

ALJ Robert Bowling conducted a hearing in Hazard, Kentucky on September 20, 2014. (AR 26). Miniard attended the hearing, accompanied by her lawyer and testified on her own behalf. Linda Koffler,[1] an impartial vocational expert, also appeared and testified via telephone. (AR 26, 31). After the hearing and reviewing Miniard's claims *de novo*, the ALJ entered a written decision denying benefits on December 17, 2014. (AR 11-21). That decision is the subject of this appeal.

B. The Administrative Decision

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, *see* 20 C.F.R § 404.1520, and found that Miniard's claim failed at step five.

---

[1] The hearing transcript identifies the vocational expert as Linda Koffler (phonetic spelling). The ALJ decision and the Commissioner's Motion for Summary Judgment, however, identify the vocational expert as Summer Gawthorp. (AR 11, DE 12).

At step one, the ALJ found that Miniard had not engaged in substantial gainful activity since October 1, 2001, the earlier of her alleged disability onset date. (AR 13). At step two, the ALJ found that Miniard suffered from several severe impairments: (1) disorders of the joints; (2) disorders of the spine; (3) affective disorders; and (4) anxiety disorders. (AR 14).

At step three, the ALJ found that Miniard's severe impairments did not meet and were not medically equal in severity to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that Miniard's joint and spine disorders did not meet listing 1.02 or 1.04 because the record did not contain evidence of "nerve root compression characterized by motor loss . . . pseudoclaudication, inability to ambulate effectively, or inability to perform fine and gross movements." (AR 14); *see* 20 C.F.R. Pt. 404, Subpart. P, App. 1 § 1.00 (2012).[2] The ALJ also found that Miniard's mental impairments did not meet listing 12.04 or 12.06 because she only experienced moderate restrictions in daily living, social functioning, and maintaining concentration, persistence, and pace, and she had no episodes of decompensation—meaning periods of exacerbated symptoms. (AR 14-15); *see* 20 C.F.R. Pt. 404, Subpart. P, App. 1 § 12.00A.

Before reaching step four, the ALJ determined Miniard's residual functional capacity (RFC). The ALJ found that Miniard retained, based on all of her impairments, the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) but can stand and walk for only 6 hours total in an 8-hour workday; claimant can sit for only 6 hours total in an 8-hour workday; claimant requires a sit or stand option on a 30 minute basis; claimant can only occasionally push or pull with the right upper extremity claimant can never climb ladders, ropes and scaffolds; claimant can only occasionally stoop, kneel, crouch, and crawl; claimant can only occasionally reach overhead with the right upper extremity; claimant can only frequently handle, that is, gross manipulation with the right hand; claimant should avoid concentrated exposure to unprotected heights and the use of moving machinery; work is limited to simple, routine and repetitive tasks performed in a work environment free of fast

---

[2] The SSA modified the listing criteria for mental disorders in January 2017. All subsequent citations to 20 C.F.R. Pt. 404, Subpart. P, App. 1 refer to the version of the regulation in effect at the time of Miniard's SSA-benefits application and the ALJ's decision.

4

paced production requirements involving only simple, work-related decisions and with few, if any, work place changes; and claimant should have only occasional interaction with the general public, only occasional interaction with co-workers and only occasional supervision.

(AR 15). Moving to step four, the ALJ, based on the vocational expert's testimony, found Miniard was unable to perform any of her past relevant work. (AR 19).

At the final step, the ALJ questioned the vocational expert to determine whether a significant number of jobs exist in the national economy that Miniard could perform given her limitations. The vocational expert testified that given Miniard's age, education, work experience, and RFC, Miniard could work as a mail clerk, sorter, and bench assembler. (AR 20, 58-59). The ALJ also noted that the *Dictionary of Occupational Titles* failed to address a vocational sit/stand option, but that the vocational expert addressed this by testifying, based on her experience, "that a significant number of jobs in the national economy at the light exertional level would accommodate a sit/stand option" and by reducing the total number of available jobs to reflect the sit/stand option. (AR 20). Based on the record, the ALJ concluded that Miniard was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (AR 20). Accordingly, based on the five step process, the ALJ concluded that Miniard was not disabled from October 1, 2001, the alleged disability onset date, through December 17, 2013, the date of the written decision. (AR 20).

The ALJ's decision became the final decision of the Commissioner when the Appeals Council subsequently denied her request for review on March 21, 2016. (AR 1-3); *see* 20 C.F.R. § 422.210(a). Miniard has exhausted her administrative remedies and filed a timely appeal in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## III. STANDARD OF REVIEW

Under the Social Security Act, the Court conducts a limited review of the Commissioner's decision. 42 U.S.C. § 405(g). The Court may only evaluate whether the ALJ applied the correct legal standard and made factual findings that are supported by substantial evidence in the record. *Id.*; *see also Rabbers*, 582 F.3d at 651. Substantial evidence means "more than a scintilla of evidence but less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). In assessing the ALJ's decision, the Court cannot "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Id.*; *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). If the Commissioner's decision is supported by substantial evidence, this Court must affirm that decision even if there is substantial evidence in the record that supports an opposite conclusion. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)).

## IV. ANALYSIS

Miniard challenges the ALJ's conclusions and findings at step three, the RFC determination before step four, and step five. She lodges two general assignments of error: that the ALJ erred in (1) discounting the opinion of Dr. Rigby in finding that Miniard's disability did not meet a listing and in assessing her RFC and (2) that the ALJ erred in finding there were jobs in the national economy that she could perform despite her impairments. These arguments and their subparts are addressed in turn.

A. First Assignment of Error: Whether the ALJ Erred in Discounting Dr. Rigby's Opinion

Miniard first contends that the ALJ erred with concern to her mental impairments in finding that she did not meet listing 12.04 or 12.06 and in assessing her RFC. Her primary claim is that the ALJ did not properly consider the findings of Dr. William Rigby, who saw Miniard for a consultative mental examination and who is the only medical source as to Miniard's mental impairments in the record. (AR 312-13).

1. Dr. Rigby's Opinion Is Not Entitled to Controlling Weight

"In order to determine whether the ALJ acted properly in disagreeing with a medical source, [the Court] must first determine the medical source's classification." *Ealy v. Comm'n of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). The Social Security regulations classify "acceptable medical sources into three types: nonexamining sources, nontreating (but examining) sources, and treating sources." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). As a general matter, a treating physician's opinion may be entitled to controlling weight when it is "well-supported by clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). A nontreating (but examining) source, on the other hand, is entitled only to "more weight . . . than to the opinion of a source who has not examined him." 20 C.F.R. § 404.1527(d)(1); *see also Ealy*, 594 F.3d at 514. Furthermore, even a treating physician's opinion may be given less weight when it is not supported by the evidence. *See Ealy*, 594 F.3d at 514. If the ALJ chooses to discount the opinion of a treating physician, "the ALJ is procedurally required to give 'good reasons' for discounting treating physicians' opinions, which are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"

7

*Reeves v. Comm'r of Soc. Sec*, 618 Fed. App'x. 267, 273 (6th Cir. 2015) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)). This requirement, however, applies only to treating sources, not to examining sources. *Id.* (citing *Ealy*, 594 F.3d at 514).

It is unclear whether Miniard is claiming that Dr. Rigby is a treating physician but, to the extent that she is, that claim fails. The Sixth Circuit recently explained, "[a] physician qualifies as a treating source if there is an 'ongoing treatment relationship' such that the claimant sees the physician 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Reeves*, 618 F. App'x at 273 (quoting 20 C.F.R. § 404.1502; citing *Smith*, 482 F.3d at 876). The record reveals that Dr. Rigby saw Miniard on only one occasion. It contains no other entries from Dr. Rigby and does not indicate that he provided her ongoing care. Such limited interaction does not suffice for an ongoing treatment relationship. *See Reeves*, 618 Fed. App'x. at 274 (holding that a physician who examined the claimant only once was not a treating source); *Smith* 482 F.3d at 876 (same). Thus, Dr. Rigby's opinion is an examining (but nontreating) source that is not entitled to controlling weight. Furthermore, because the Dr. Rigby was not a treating source, the Court does not need to assess if the ALJ erred by not giving good reasons for discounting Dr. Rigby's opinion. *See Smith*, 482 F.3d at 876 ("In the absence of treating-source status for these doctors, we do not reach the question of whether the ALJ violated *Wilson* by failing to give reasons for not accepting their reports.").

2. <u>The ALJ's Finding that Miniard Did Not Meet Listing 12.04 or 12.06 Was Not Supported by Substantial Evidence</u>

The base of Miniard's argument is best understood as alleging error in the way the ALJ evaluated the medical opinion evidence produced by Dr. Rigby, regardless of whether he was the treating physician.

8

When a medical opinion is not given controlling weight as a treating source opinion, the ALJ must consider certain factors in assessing the appropriate weight to give to the testimony. 20 C.F.R. § 404.1527(c)(2). These factors include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the physician. 20 C.F.R. § 404.1527(c)(2)(i)-(ii); *see also Reeves*, 618 Fed. App'x. at 273 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

Miniard was referred by the Department for Disability Determination to Dr. Rigby for a consultation regarding her mental health problems. (AR 308). At that consultation, Miniard detailed her problems with depression and anxiety dating back to 2001. (AR 308). Dr. Rigby rendered his opinion as to Miniard's psychological conditions and found that, in addition to assessing a GAF score of 55:

> The claimant has no impairment to understand, retain and follow simple instructions. The claimant has moderate impairment to sustain concentration and persistence to complete tasks in normal time. The claimant has marked impairment to maintain social interactions with supervisors, friends and the public. The claimant has extreme impairment to adapt and respond to the pressures of normal day-to-day work activity.

(AR 313).

Despite Dr. Rigby's opinion that Miniard had marked impairment to maintain social interactions and extreme impairment to adapt and respond to the pressures of normal day-to-day work activity, the ALJ found that Miniard had only a moderate restriction in activities of daily living and only moderate difficulties in social functioning. (AR 14). These findings were not supported by substantial evidence.

9

To support the decision that Miniard suffered only a moderate restriction in activities of daily living, the ALJ explained that:

> She maintains that she has difficulty sleeping and caring for her personal needs due to physical allegations. She cleans up around the house, cooks some, pays bills, and cares for her Great Dane. The claimant has a driver's license and drives using her left arm.

(AR 14). With the exception of her ability to pay bills, the record does not support, and at times contradicts, the reasons the ALJ gave for determining that Miniard suffered only a moderate restriction daily living.

At her disability hearing, the ALJ asked Miniard six questions related to household chores: if she vacuumed, mopped, did laundry, took out the trash, did repairs, or mowed the lawn. Her answer to each of these questions was no. Miniard also testified that she cannot do dishes and does not dust. Instead, Miniard explained that she relied on a friend to come and do the laundry and take out the trash. (AR 49-50). Moreover, the ALJ asked Miniard, point blank, if she "clean[s] up around the house," to which Miniard responded "I can't -- I don't dust, those kinds of things." (AR 49). The only household cleaning that Miniard testified she was able to do was to "pick [her] things up and put them back." (AR 49). Accordingly, the ALJ's finding that Miniard "cleans up around the house" was not supported by the record.

When asked if she can cook, Miniard responded that she "eat[s] cereal and soup" but that her "friend comes and she'll cook or bring me things like [cereal and soup] to eat." (AR 49). The ALJ's finding that Miniard "cooks some" is therefore inconsistent with Miniard's testimony that she relies on her friend to cook and bring her food.

The ALJ's finding that Miniard cares for her Great Dane is also contradicted by the record. At her hearing, the ALJ asked Miniard if she, "feed[s] it, water[s] it?" to which

10

Miniard first responded that she did feed the dog. But Miniard quickly clarified that "well, I don't feed it. I have a feeder . . . [m]y friend fills it up and she always puts the water in." (AR 51). The ALJ then asked Miniard directly, "[s]o you don't actually do any of that?" to which Miniard responded, "[n]o, I guess not, no." (AR 51). Thus, the ALJ erred in finding that Miniard cares for her Great Dane.

Finally, the ALJ's statement that Miniard has a "driver's license and drives using her left arm" does not paint a full picture of the limitations on her abilities. At the hearing, Miniard testified that she drives "maybe two times a week" and only for "just a few minutes" at a time. (AR 31). But these limitations were not included by the ALJ in his findings.

Similarly, the ALJ's basis for concluding that Miniard has only moderate difficulties with social functioning is inconsistent with the record. The ALJ based his conclusion on the finding that:

> [Miniard] maintains that she goes few places and gets aggravated with others. However, she visits and talks with friends and family regularly. She goes to church and has never been fired or laid off because of difficulties getting along with others.

(AR 14-15). Miniard has one friend who visits regularly, but the record suggests that the purpose of these visits is not social, but rather to assist Miniard by performing the household tasks that she is unable to do herself. The record clearly establishes that Miniard does not visit or talk with other friends. At her hearing she testified that "I just don't like people around me, and I'm just agitated, and I don't like people in my house. I just don't want to be around anybody, and don't want them around me." (AR 48). When asked if she visits other people, Miniard answered no. (AR 50). She stated that she does not associate with her neighbors, and that she had never been in their house or them in hers. (AR 53). Similarly, during her examination by Dr. Rigby, Miniard stated that it had been four years

11

since she saw a friend. (AR 311). Additionally, the ALJ failed to mention in his findings that Miniard engages in almost no other social activities. (AR 50) While Miniard did testify that she goes to church, the record suggests her attendance is infrequent, as she told Dr. Rigby she only attends once every two months. (AR 311). The ALJ did not inquire into the frequency of her church attendance.

Because of the inconsistencies between the bases for the ALJ's finding and the record the Court finds that the ALJ's decision that listing 12.04 or 12.06 was not based on substantial evidence. While the ALJ is not required to adopt the medical opinion of Dr. Rigby with regards to whether Miniard's impairments meet a listing, *see* 20 C.F.R.§ 404.1527(d)(2), his reasons should be based on an accurate reading of the record.

3. The ALJ Erred in Assessing Miniard's RFC

Miniard makes a similar argument that the ALJ erred in assessing her RFC. The ALJ found that Miniard had a residual functional capacity to perform light work with a number of limitations. In relation to her mental impairments, the ALJ found that Miniard's work:

> is limited to simple, routine and respective tasks performed in a work environment free of fast paced production requirements involving only simple, work-related decisions and with few, if any, work place changes; and [Miniard] should have only occasional interaction with the general public, only occasional interaction with co-workers and only occasional supervision.

(AR 15). The ALJ noted that Dr. Rigby had opined that Miniard:

> had moderate limitations in her ability to sustain concentration and persistence to complete tasks in normal time, marked limitations in her ability to maintain social interactions with supervisors, friends and the public; and extreme limitation in her ability to adapt and respond to the pressures of normal day to day work activity."

(AR 18). The ALJ, however, gave "little weight" to Dr. Rigby's opinion and the assigned GAF score because he found the opinion was "inconsistent with the claimant's lack of treatment with any mental health professionals and her ability to maintain the residence

12

at which she lives alone." (AR 18). As discussed above, Dr. Rigby's opinion was an examining (but nontreating) source. The opinion was therefore not controlling and the ALJ had the discretion to assign weight to the opinion based on the factors listed in 20 C.F.R. § 404.1527(c)(2)(i)-(ii). However, the ALJ's reasons for discounting Dr. Rigby's opinion were flawed.

The Sixth Circuit has held that "failure to seek formal mental health treatment is 'hardly probative' of whether the claimant suffers from a mental impairment, and 'should not be a determinative factor in a credibility assessment' relating to the existence of a mental impairment." *Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 Fed. App'x. 488, 493 (6th Cir. 2011) (quoting *Burton v. Apfel*, 208 F.3d 212 (6th Cir. 2000) (quoting *Strong v. Soc. Sec. Admin.*, 88 Fed App'x. 841, 846 (6th Cir. 2003)). This is because it is a "questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Strong*, 88 Fed. App'x. at 846. Furthermore, where a claimant lacks the money for medical examination or treatment, failure to obtain treatment is even less probative. *See McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990) (holding that the severity of a disability must be evaluated without regard to remediability if the claimant cannot afford treatment).

Miniard's failure to seek treatment for her affective and anxiety disorders was a stated reason for the ALJ concluding that that her mental health symptoms did not limit her more than stated in the RFC and for discounting Dr. Rigby's opinion. (AR 18).The ALJ, however, did not consider that Miniard's mental health disorders may be the reason for her failure to obtain treatment. *See Strong* 88 Fed. App'x. at 846. Furthermore, Miniard stated that her reason for not obtaining mental health treatment was that she lacked the money to see a therapist or counselor. (AR 43). Yet, despite finding that Miniard suffered from four

13

disabling conditions, the ALJ did not consider that poverty may be her justification for lack of mental health treatment. *See Strong*, 88 Fed. App'x. at 846 (stating that the issue of poverty as a justification for failure to obtain treatment is considered if the claimant is found to be under a disabling condition).

The second reason the ALJ gave for discounting Dr. Rigby's opinion and justifying the RFC that Miniard "has been able to maintain her residence at which she lives alone." (AR 18). This conclusion, however, suffers from the same errors made by the ALJ in assessing whether Miniard met listing 12.04 or 12.06. In his opinion, the ALJ once again stated that Miniard "cleans up around the house, cooks some . . . cares for her Great Dane . . . visits with friends . . . has a driver's license and drives using her left arm [and] attends church." As discussed above, these findings are inconsistent with the record.

The Commissioner argues that Miniard merely seeks to have the evidence weighed differently, and that this Court should affirm the findings as supported by substantial evidence. (DE 12 at 11). That is not the case. There is no other medical evidence in this case regarding Miniard's mental impairments except Dr. Rigby's opinion.[3] The ALJ did not request additional examination of Miniard or even a review of her medical records by a non-examining psychologist. The only reasons that the ALJ gave for discounting Dr. Rigby's opinion were based on a flawed reading of the record. Accordingly, the ALJ's RFC finding was not based on substantial evidence.

---

[3] The Commissioner's brief suggest that the ALJ's decision was also subsequently supported by Miniard's April 2014 examination by Dr. Bean. (DE 12 at 10). But Dr. Bean's opinion was not cited by the ALJ and the examination concerned Miniard's back pain, not her mental impairments, as Dr. Bean is a neurosurgeon not a psychologist.

B. <u>Second Assignment of Error: Whether the ALJ Erred in Finding Miniard Had the Residual Functional Capacity to Perform Work in the National Economy</u>

Miniard's next argument is that the ALJ improperly applied the RFC to find that there were jobs in the national economy that she could perform. This argument can be divided into two sub-parts. First, that the ALJ incorrectly applied the vocational guidelines at step five. And second, that the jobs that the vocational expert found that Miniard could do were actually eliminated by her RFC. However, because the Court finds that Miniard's RFC was not supported by substantial evidence, these issues cannot be addressed without first reassessing Miniard's RFC.

## V.  CONCLUSION

For the reasons set forth above, the Court herby **ORDERS** as follows:

1. Plaintiff's motion for summary judgment (DE 11) is **GRANTED** to the extent that the plaintiff requests that this matter be **REMANDED** to the Commissioner;

2. The Commissioner's motion for summary judgment (DE 12) is **DENIED;**

3. The decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and this matter is **REMANDED** to the Commissioner; and

4. A judgment consistent with this Opinion & Order will be entered contemporaneously.

Dated September 21, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY